IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ARNETT HARDNICK, | : |
| Plaintiff, | : |
| | Case No. 3:04cv272 |
| vs. | : |
| | JUDGE WALTER HERBERT RICE |
| MICHAEL B. DONLEY, ACTING SECRETARY OF THE AIR FORCE,[1] | : |
| | : |
| Defendant. | |

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #14); JUDGMENT TO ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF UPON STATED CONDITION; TERMINATION ENTRY

The Defendant, Acting Secretary of the Air Force Michael B. Donley, employed the Plaintiff, Arnett Hardnick, in various capacities in the Base Restaurants at Wright-Patterson Air Force Base, Ohio, beginning in 1960. On January 16, 1995, the Air Force removed Hardnick from employment, as a result of a reduction in force ("RIF"). The Air Force later offered her re-employment and back pay, upon a final agency decision of retaliation that was issued as a result of Hardnick filing an Equal Opportunity ("EEO") complaint. Upon returning to work for one day and then resigning, Hardnick complained that she had been retaliated

---

[1] The Secretary of the Air Force, at the time the Plaintiff commenced this litigation, was James G. Roche. The current acting Secretary of the Air Force, who is automatically substituted as a party defendant in accordance with Federal Rule of Civil Procedure 25(d), is Michael B. Donley.

against again, because she was not offered health care coverage upon her return to work. In ruling on this second complaint, the Administrative Law Judge granted summary judgment in favor of the Air Force. After the Air Force issued another final agency decision on the complaint, Hardnick then commenced the present action, under Title VII,[2] requesting the Court to order the Air Force to comply with the two final agency decisions.

I.    SUMMARY JUDGMENT STANDARD[3]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[2]The Plaintiff also purports to bring her claims under Section 1981, but the Court recognizes that "Title VII provides the exclusive remedy for employment discrimination claims advanced by federal employees." Griggs v. National R. Passenger Corp., 900 F.2d 74, 76 (6th Cir. 1990) (citing Brown v. General Services Administration, 425 U.S. 820, 835, 96 S. Ct. 1961 (1976)).

[3]The Defendant has moved, in the alternative, for the Court to dismiss this case under the provisions of Federal Rule of Civil Procedure 12(b)(1). Because the parties have submitted materials outside the pleadings for the Court's consideration in this matter, the Court will decide this motion as a Motion for Summary Judgment. Yeschick v. Mineta, 521 F.3d 498, 501 n.2 (6th Cir. 2008).

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.

II.     FACTS[4]

On January 16, 1995, Hardnick was separated from employment as a purchasing agent at the Wright Patterson Base Restaurants through a reduction-in-force ("RIF"). Doc. #14, Attach. #26 (Fin. Agency Dec., dtd. Oct. 28, 1996)[5] at 1. As a result of her separation, Hardnick filed an EEO complaint alleging discrimination on the basis of race, as well as alleging retaliation for participation in prior EEO activity. Doc. #14, Attach. #25 (EEOC Findings of Fact & Concl. of Law, dtd. June 27, 1996).[6]  The investigation into that complaint concluded with a determination that, although there was no proof of race-based discrimination, there

---

[4]Since this case comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

[5]This document is not properly authenticated.  Since there is no dispute between the parties as to the contents of the document, the Court will rely upon it, in ruling on the issues presented here.  Specific instructions are given to Defendant, at the conclusion of this Decision, however, regarding placing this evidence in proper Rule 56 form.  Failure to comply will cause this Court to vacate its ruling, on certain of the issues herein.

[6]See comments, *supra*, note 5.

was sufficient evidence of retaliation to warrant a reaccomplishment[7] of the RIF.[8] Doc. #14, Attach. #26 (Fin. Agency Dec., dtd. Oct. 28, 1996) at 10. Thus, in a Final Agency Decision, dated October 28, 1996 ("1996 FAD"), the Air Force ordered its management to reaccomplish the RIF as it pertained to Hardnick and if, "upon reaccomplishment, [Hardnick] accepts an offer of placement in a position pursuant to AFR 40-7, [she] will be placed retroactively to January 16, 1995, with back pay, interest, and any and all benefits that she would otherwise have earned from that date forward." Id. at 10-11. The 1996 FAD also ordered Hardnick to "provide any information requested by management as reasonably necessary to its determination of the amount of relief due." Id. at 11.

Beginning on November 14, 1996, the Air Force sent and Hardnick received a series of six letters offering her the job of Food Service Worker, with a 20-hour work week, and seeking information regarding her income, for purposes of calculating her back pay.[9] Doc. #14, Attach. #2 (Ltr. dtd. Nov. 14, 1996); Doc. #14, Attach. #3 (Ltr. dtd. Dec. 19, 1996); Doc. #14, Attach. #4 (Ltr. dtd. Jan.

---

[7]The on-line Oxford English Dictionary defines "reaccomplishment" (spelled "re-accomplishment") as "[a] second accomplishment or fulfilling." http://dictionary.oed.com. In this context, the Court construes this term as meaning "re-doing the RIF with regard to this particular employee, the Plaintiff."

[8]Specifically, the Administrative Law Judge recommended that the Plaintiff be hired "into a position of Food Service Work or its equivalent." Doc. #14, Attach. #25 (EEOC Findings of Fact & Concl. of Law, dtd. June 27, 1996) at 21.

[9]See comments, *supra*, note 5, as to all of the letters referred to in this string cite.

23, 1997); Doc. #14, Attach. #5 (Ltr. dtd. June 17, 1997); Doc. #14, Attach. #6 (Ltr. dtd. Sept. 9, 1998); Doc. #14, Attach. #7 (Ltr. dtd. Mar. 16, 1999); Doc. #14, Attach. #28 (Hardnick Dep.) at 15-16, 25-26, 30, 49-50, 58-59, 63-64. Hardnick did not accept or decline the offered position, as requested in the various letters, nor did she provide any of the income information requested. Doc. #14, Attach. #28 (Hardnick Dep.) at 15-16, 25-26, 30, 49-50, 58-59, 63-64. On April 13, 1999, the Air Force dismissed Hardnick's EEO complaint "for failure to cooperate under 29 C.F.R. § 1614.107(a)(7)." Doc. #14, Attach. #27 (EEOC Decision, dtd. May 31, 2001)[10] at 1.

Hardnick appealed this decision to the EEOC, which ultimately concluded that, since the 1996 FAD made a finding of discrimination related to Hardnick's reprisal claim, it was "improper for the agency to later dismiss the complaint under the provisions of 19 C.F.R. § 1614.107(a)."[11] Id. at 2. The EEOC then remanded the matter to the agency "for further action as ordered in the [1996 FAD]."[12] Id. The EEOC Decision concluded as follows:

> We note that only if complainant makes a claim pursuant to EEOC Regulation 29 C.F.R. § 1614.504[,] that the agency is not in compliance with the relief granted in its final decision[,] may the

---

[10]See comments, *supra*, note 5.

[11]Neither the parties' briefs nor the cited EEOC Decision makes it clear why it was improper for the Air Force to dismiss the complaint under 19 C.F.R. § 1614.107(a), simply because the 1996 FAD made a finding of discrimination related to Hardnick's reprisal claim.

[12]In the meantime, Hardnick submitted paperwork to retire and was granted a retirement date retroactive to her date of separation, January 16, 1995. Doc. #14, Attach. #31 (Hess Aff.) ¶ 13.

7

> Commission appropriately address compliance related issues. As there is no indication in the record that complainant has made such a claim under EEOC Regulations, we do not address agency compliance in the present appeal.

Id. In response to this order, the Air Force sent Hardnick two letters offering her the position of Food Service Worker, with a 40-hour work week (as opposed to the previous offer of a 20-hour work week), and again requesting the previously sought-after income information.[13] Doc. #14, Attach. #8 (Ltr. dtd. June 13, 2001); Doc. #14, Attach. #9 (Ltr. dtd. June 18, 2001).

Hardnick accepted the newly offered position, by letter from her attorney dated July 13, 2001, but once again did not supply the requested income information. Doc. #14, Attach. #10 (Ltr. dtd. July 13, 2001).[14] Subsequently, the Air Force sent and Hardnick received three more letters requesting the income information, in order to calculate the back pay owed to Hardnick, all to no avail.[15] Doc. #14, Attach. #11 (Ltr. dtd. July 30, 2001); Doc. #14, Attach. #12 (Ltr. dtd. Aug. 29, 2001); Doc. #14, Attach. #13 (Ltr. dtd. Sept. 24, 2001). Hardnick's attorney then sent a letter to the Air Force, demanding a meeting so that Hardnick could provide the requested documentation in person. Doc. #14, Attach. #14 (Ltr. dtd. Sept. 25, 2001).[16]

---

[13]See comments, *supra*, note 5, as to both of these letters.

[14]See comments, *supra*, note 5.

[15]See comments, *supra*, note 5, as to all three of these letters.

[16]See comments, *supra*, note 5.

8

The requested meeting took place on October 15, 2001. Doc. #14, Attach. #16 (Ltr. dtd. Oct. 16, 2001).[17]  Hardnick did not bring the requested income documents to that meeting, although it was agreed that she would provide them within ten calendar days. Id.  It was also agreed that Hardnick would report for duty as a Food Service Worker on October 22, 2001. Id.

Hardnick reported for work, as arranged, on October 22, 2001. Doc. #14, Attach. #31 (Hess Aff.) ¶ 19.  During inprocessing, on this date, she met with the Human Resources Officer, Barbara Hess, and discussed health insurance. Id. Hardnick requested coverage by a plan that was not the regular Air Force health insurance plan and also requested retroactive coverage. Id.  Hess told Hardnick that she could get present coverage from the requested insurance carrier, but that she, Hess, would have to call the carrier to see if it would provide retroactive coverage. Id.  She placed that call later that day and learned, by return phone call the following day (October 23, 2001), that the carrier would, in fact, provide the requested retroactive coverage. Id.  Hess immediately called Hardnick's work location to ask Hardnick to come to Hess's office to sign the health benefits elections forms, but was informed that Hardnick had left work early the previous day (her first day of work) and had requested sick leave for that day. Id.

Hardnick never returned to work. Id.  On October 30, 2001, Hardnick's

---

[17]See comments, *supra*, note 5.

9

attorney sent the Air Force a letter stating that she had "constructively resigned."[18]

Id.; Doc. #14, Attach. #23 (Ltr. dtd. Oct. 30, 2001).[19]

On November 7, 2001, the Air Force sent and Hardnick received another letter seeking her income information, to which she once again did not respond. Doc. #14, Attach. #17 (Ltr. dtd. Nov. 7, 2001);[20] Doc. #14, Attach. #30 (Hardnick Dep.) at 97-98.[21] On January 10, 2002, the Air Force sent Hardnick a

---

[18]The letter states that the "constructive resignation" was necessary for the following reasons:

(1) [Hardnick] has no documented assurances of what steps have been taken to prevent a reoccurrence,
(2) after returning to work she had to see her physician due to the work environment,
(3) she, after consultation with her doctor, does not believe, in the interest of her health, returning to work is safe or healthy and
(4) there is still the issue of her grievance that remains unresolved which we discussed.

Doc. #14, Attach. #23 (Ltr. dtd. Oct. 30, 2001).

[19]See comments, *supra*, note 5.

[20]See comments, *supra*, note 5.

[21]On this point, the Plaintiff's Deposition provides the following helpful explanation:

Q: Do you know whether or not the information that was requested was provided to the people at the Base as of November 7, 2001?
A: I don't believe that it was, no.
Q: Do you have any idea why that was the case, what happened that caused it not to be given to the people at the Base?
A: Yes. I have lots of ideas about it, because first of all, I didn't trust them over there and I felt like they was trying to make me the bad guy, the bad person, because i didn't feel like I really owed them anything. I was going to give them the documents. Whatever they

letter informing her that it had closed her EEO complaint, citing the numerous attempts to contact her and her repeated failures to provides the required information. Doc. #14, Attach. #18 (Ltr. dtd. Jan. 10, 2002).[22]

Eventually, on March 18, 2002, Hardnick submitted some, but not all, of the requested income information. Doc. #14, Attach. #19 (Ltr. dtd. Mar. 18, 2002);[23] Doc. #14, Attach. #31 (Hess Aff.) ¶ 24. Upon review of the information provided, the Air Force notified Hardnick that it could not make a determination of her back pay entitlement amount based on the incomplete financial information she had provided and that it was, thus, concluding its action on her EEO complaint. Doc. #14, Attach. #22 (Final Agency Dec., dtd. July 24, 2003)[24] (citing, for example, her failure to provide income tax returns for six out of the seven years requested).

In the meantime, Hardnick filed a new complaint with the EEOC, alleging that she had been discriminated against, due to retaliation, because the Air Force had denied her health care coverage upon her return to work on October 22, 2001.

---

> needed, I was going to provide to them, but they had jacked me around for so many years and being disrespectful, telling lies, keep writing me documents, and I'm talking in between time in these years, talking to other employees of things that happened that they did not do for me that I intend to be able to get you everything you're going to need, but it was a lot, Attorney Dunsky. They did a lot.

Doc. #14, Attach. #30 (Hardnick Dep.) at 97-98.

[22]See comments, *supra*, note 5.

[23]See comments, *supra*, note 5.

[24]See comments, *supra*, note 5.

11

Doc. #1, Attach. #3 (EEOC Dec., dtd. Mar. 15, 2004)[25] at 2.  The Air Force moved for summary judgment, on this claim, and Hardnick did not respond. Id.  In her decision on the matter, the Administrative Law judge determined that, although Hardnick had presented sufficient evidence to establish a *prima facie* case of retaliation (given that Hess, who had processed her health care forms on October 22, 2001, when she returned to work for one day, was also involved in the prior retaliation issues that resulted in the 1996 FAD), the Air Force had submitted sufficient evidence to show a legitimate nondiscriminatory reason for not immediately granting her coverage on the day she returned to work, since it had to check with the insurance carrier regarding the retroactive coverage.  Furthermore, the Air Force prepared the necessary enrollment forms for Hardnick's signature the following day, yet she never returned to work. Id. at 3-4.  Because Hardnick provided no evidence of pretext, in response, the judge granted the Air Force's motion for summary judgment. Id. at 4.

On April 27, 2004, the Air Force issued a Final Agency Decision ("2004 FAD"), on this complaint. Doc. #1, Attach. #1.[26]  The language of the 2004 FAD is confusing.  The first two paragraphs on the first page correctly set forth the conclusions of the Administrative Law Judge, in favor of the Air Force. Id. at 1.  The third and fourth paragraphs on that page, however, indicate that the Air Force

---

[25]See comments, *supra*, note 5.

[26]See comments, *supra*, note 5.

has determined to "not fully implement the decision of the Administrative Judge" and that the Air Force's appeal to such is attached to the order. Id. However, no such appeal is attached and the two succeeding pages of the FAD provide Hardnick with information as to how she can appeal the decision and grant her the right to file a civil action, which she subsequently did in the form of the present litigation.[27] Id. at 2-3. The Court finds if unnecessary to resolve the issue of whether the 2004 FAD was favorable to the Air Force or to Hardnick, however, in that the decision rendered herein would be the same in either scenario.

III.   ANALYSIS

Among other things, the Defendant argues that it is entitled to summary judgment, because the Plaintiff failed to exhaust her administrative remedies.

---

[27] To add to the confusion surrounding the 2004 FAD, Hardnick's Complaint, in the present case, makes the following assertions regarding that Decision. First, the Complaint states that the basis of the present action is the 2004 FAD and asserts that the Complaint is timely filed pursuant to that Decision, thereby implying that the 2004 FAD contained terms favorable to the Air Force and that the Plaintiff is appealing therefrom. Doc. #1 at 1. Also, the Complaint incomprehensibly states (with no follow-up discussion in the Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment) that the "Plaintiff's claims from [the 1996 FAD] should have been consolidated [with the claim considered in the 2004 FAD]. Accordingly, the Administrative Law Judge's decision . . . was not fully implemented with an order that the cases be consolidated." Id. at 3. Finally, the entirety of the second cause of action, as stated in the Complaint, reads as follows: "Plaintiff alleges that the Air Force should be ordered to implement the final agency decision and Plaintiff's damages," thereby implying that the 2004 FAD contained terms favorable to the Plaintiff. Id. at 4. (The Court presumes that the "final agency decision" referred to in the Complaint's second cause of action is the 2004 FAD, since the Complaint addresses the 1996 FAD in the first cause of action.)

13

Specifically, the Defendant points out that 29 C.F.R. § 1614.504 provides as follows:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, <u>the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance</u>. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

29 C.F.R. § 1614.504(a) (emphasis added). Thus, the Defendant concludes that before seeking judicial enforcement of a final agency decision the Plaintiff must have applied for relief from the EEOC, under this Regulation.

In response, the Plaintiff argues that the RIF was not properly reaccomplished. The gist of the Plaintiff's argument here seems to be that the Air Force should have offered her a better job than a Food Service Worker, upon reaccomplishing the RIF.[28] Further, the Air Force should not have allowed Hess to be involved in reaccomplishing the RIF, since she was involved in the events that precipitated the original determination of retaliation.[29] In sum, then, the Plaintiff is

---

[28] Citing the 1996 EEOC Findings of Fact and Conclusions of Law, the Plaintiff states that she was to have been re-hired "into a position of Food Service Work <u>or its equivalent</u>." Doc. #17 at 4 n. 3 (emphasis in original). The Plaintiff then goes on to state that "Ms. Hardnick, however, believed she was due more than a Food Service Worker." Id.

[29] It is unclear what role Hess played in the selection of the position offered to Hardnick, upon the reaccomplishment of the RIF. The Plaintiff asserts that "[d]espite Ms. Hess knowing the multiple jobs Ms. Hardnick held . . . she only offered her a Food Service Worker position." Doc. #17 at 4. However, the evidence the Plaintiff points to in support of the implication that Hess was the

14

arguing that the Air Force did not properly comply with the 1996 FAD because it improperly reaccomplished the RIF.[30]

Based upon a review of the facts and applicable law, the Court concludes that the Defendant is correct in asserting that the Plaintiff did not exhaust her administrative remedies before bringing this suit. In seeking enforcement of or compliance with an agency decision, a plaintiff is required to first solicit the help of the EEOC, within 30 days of when the plaintiff knows or should have known of the alleged noncompliance. 29 C.F.R. § 1614.504(a). The Plaintiff here presents no evidence to indicate that she <u>ever</u> solicited the help of the EEOC for assistance.[31]

---

decision maker in the selection of the position is not supportive. See Doc. #17, Attach. #5 (Hess Dep.) at 95-96. Furthermore, a quick review by the Court of the first six letters sent by the Air Force to the Plaintiff offering her the Food Service Worker position indicates that none of these letters was signed by Hess.

[30]The Court notes here that the Plaintiff's arguments, on brief, pertain only to the 1996 FAD.

[31]The Plaintiff attempts to make an argument against the Defendant's assertion that her claim fails because she did not first request enforcement from the EEOC.

> Defendant is essentially asserting that Defendant's non-compliance absent Plaintiff making a challenge under 29 C.F.R. § 1614.504 precludes Plaintiff from any relief. To the contrary, the Air Force, by not considering an "equivalent" position to that of Food Service Worker and not taking measures to fully protect Plaintiff from what permitted the retaliatory animus, standing alone, is proof that [the] Air Force's non-compliance with the FAD, in the first instance, is what caused the suit now before this court.

Doc. #17 at 8. However, this argument is circular in that it seems to start with the recognition that noncompliance suits are barred without first approaching the EEOC, but ends with an acknowledgment that the present suit is based on a

In an unpublished opinion, the Sixth Circuit addressed a case with similar facts and came to the same conclusion. The plaintiff, in Eneje v. Ashcroft, 2003 U.S. App. LEXIS 12710 (6th Cir. 2003), had been terminated by the federal Bureau of Prisons, which prompted him to file a complaint of discrimination with the EEOC. A final agency decision determined that the plaintiff had, in fact, been discriminated against and ordered reinstatement and back pay. Id. at **2-3. The Bureau of Prisons sent the plaintiff a check for back pay, but the plaintiff immediately questioned the amount of same. Id. at *8. Nine months later, when he received his W-2 form, he again questioned the calculation of his back pay. Id. at *9. However, the plaintiff did not contact the agency's EEO Director until four months after receipt of the W-2 form. Id.

The plaintiff, in Eneje, brought suit alleging noncompliance with the original back pay determination and also alleging that he was retaliated against when the agency miscalculated that pay. Both the District Court and the Sixth Circuit concluded that the claim of noncompliance was barred by the plaintiff's failure to pursue administrative remedies within 30 days, as mandated by 29 C.F.R. § 1614.504(a). Id. at *11; 183 F. Supp. 2d 931, 933-34 (E.D. Ky. 2001). As to the separate retaliation claim, the courts agreed that the claim was simply a restatement of the plaintiff's claim of noncompliance and, thus, failed for the same reason. 2003 U.S. App. LEXIS 12710, at **11-14; 183 F. Supp. 2d at 933-34.

---

noncompliance argument (with no suggestion that the EEOC was ever approached).

16

The Court, in the present case, concludes that the same result applies to the facts of this case.  The Plaintiff has improperly asked this Court to force the Defendant to comply with the terms of the 1996 FAD and the 2004 FAD, without providing the Court any indication that she first "notif[ied] the EEO Director, in writing, of the alleged noncompliance within 30 days of when [she] knew or should have known of the alleged noncompliance," as required by 29 C.F.R. § 1614.504(a).  As a matter of fact, there is no indication that the Plaintiff, in this case, <u>ever</u> notified the EEO director of her request for assistance.  There being no genuine issue of material fact as to whether the Plaintiff exhausted her administrative remedies, the Defendant's Motion for Summary Judgment (Doc. #14) is SUSTAINED.

IV.     CONCLUSION

The Defendant's Motion for Summary Judgment (Doc. #14) is SUSTAINED, as to all Counts.  Judgment is to be entered on behalf of the Defendant and against the Plaintiff, on all claims in the Plaintiff's Complaint.

All rulings hereunder are made on the condition that the Defendant provides proper Rule 56 evidence of the following documents, to the Court, within ten (10) calendar days of the date of this Order:

- 1996 FAD (Doc. #14, Attach. #26);

- EEOC Findings of Fact and Conclusions of Law, dated June 27, 1996 (Doc. #14, Attach. #25);

17

- Letter dated November 14, 1996 (Doc. #14, Attach. #2);

- Letter dated December 19, 1996 (Doc. #14, Attach. #3);

- Letter dated January 23, 1997 (Doc. #14, Attach. #4);

- Letter dated June 17, 1997 (Doc. #14, Attach. #5);

- Letter dated September 9, 1998 (Doc. #14, Attach. #6);

- Letter dated March 16, 1999 (Doc. #14, Attach. #7);

- EEOC Decision, dated May 31, 2001 (Doc. #14, Attach. #27);

- Letter dated June 13, 2001 (Doc. #14, Attach. #8);

- Letter dated June 18, 2001 (Doc. #14, Attach. #9);

- Letter dated July 13, 2001 (Doc. #14, Attach. #10);

- Letter dated July 30, 2001 (Doc. #14, Attach. #11);

- Letter dated August 29, 2001 (Doc. #14, Attach. #12);

- Letter dated September 24, 2001 (Doc. #14, Attach. #13);

- Letter dated September 25, 2001 (Doc. #14, Attach. #14);

- Letter dated October 16, 2001 (Doc. #14, Attach. #16);

- Letter dated October 30, 2001 (Doc. #14, Attach. #23);

- Letter dated November 7, 2001 (Doc. #14, Attach. #17);

- Letter dated January 10, 2002 (Doc. #14, Attach. #18);

- Letter dated March 18, 2002 (Doc. #14, Attach. #19);

- Final Agency Decision, dated July 24, 2003 (Doc. #14, Attach. #22);

- EEOC Decision, dated March 15, 2004 (Doc. #1, Attach. #3); and

- 2004 FAD (Doc. #1, Attach. #1).

Failing this, the Decision and the Judgment entered hereon will be vacated.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

July 17, 2008

                                                    /s/ Walter Herbert Rice
                                          WALTER HERBERT RICE, JUDGE
                                          UNITED STATES DISTRICT COURT

Copies to:
Counsel of record